GEORGE CADWALLADER *vs.* ISAIAH KROESEN.

CONTRACT, CONSTRUCTION OF: VENDOR AND VENDEE: PARTNERSHIP, PARTNERS.—C.
being indebted to S. J. & O. for goods sold and delivered, M. as agent
of C. sold and delivered to S. a member and active partner of the firm
of S. J. & O. certain cattle belonging to C., it being ageed between them
that M, as such agent would deal out the price of said cattle at the store
of S. J. & O., and that the old account then due them by C. should be
included in the arrangement as part payment for the cattle.   M. after-
wards purchased goods to about the value of the cattle, less the amount
of the old account, but before an adjustment of the accounts between the
said parties, S. J. & O. failed, and their affairs went into the hands of
K., a trustee, who sued out an attachment on warrant against C. for the
amount of the old and new accounts.  It was in evidence that the bills
contracted by M. for C. with S. J. & O., were usually paid in cash at the
end of every six months; but that before the failure of the firm, O., another
member thereof was aware of the claim of M. as agent to the set-off to
the firm's account against C.—HELD:

1st. That the agreement between S. & M. for the sale and purchase of the
cattle mentioned, authorized the inference that the transaction was for the
private benefit of S., and that it was made without the knowledge and
consent of his co-partners.

2nd. Although the goods obtained by M. belonged to the firm, yet the pay-
ment for them by delivery of the cattle to S. alone, was a transaction so
foreign to the usual course of dealing, that this circumstance should have
lead M. to inquire and inform himself whether the other members of the
firm assented to the agreement, or whether the value of the cattle had
enured to their mutual benefit.

3rd. The mutual responsibility of partners and the power of one to bind his
co-partners, in the *usual* routine of the partnership transactions, is well
established; but where an agreement is made by one partner, out of this
routine, the circumstances attendant upon the transaction would be pro-
perly submitted to the jury.

APPEAL from the Circuit Court for Baltimore County:

The appellee in this case as assignee of Sewell, Janney
& Owings, sued the appellant by *attachment on warrant*
in the Circuit Court for Baltimore County, for goods sold
and delivered between the 28th of August 1852, and
April 14th 1853, amounting at the last date to $366.90.
The attachment was dissolved by a bond being given, the
defendant appeared and a declaration was filed.   It was
then agreed, that the defendant should have leave to file

an account in bar, and that no advantage should be taken of any neglect or error in the pleadings on either side up to date, (December 14th 1858.)

On the third Monday of May 1859, an agreement was filed, that the case should be submitted on an agreed statement of facts, to be laid before the Judge during the month of June 1859, and argued on notes. Subsequently, an agreed statement of facts was filed, with the written testimony of James Moore; on which statement and testimony the case was submitted to the Court, with authority to make such inferences of matter of fact as a jury would be authorized to make therefrom.

The facts, as shown by the statement and testimony, are as follows:

The firm of Sewell, Janney & Owings, from August 1st 1852, to July 23rd 1853, consisted of James M. Sewell, William H. Janney and Samuel B. Owings, all of whom are still living, and their business was that of a wholesale grocery and commission house; the account marked exhibit A, is a correct account of the dealings between the said firm of Sewell, Janney & Owings, and George Cadwallader, (the defendant,) so far as concerns the articles obtained from that firm on account of the defendant, the prices thereof, and the times of obtaining them. The said firm failed in March 1853, but their sales were continued until some time afterwards, to dispose of the stock of goods on hand at the time of their failure. On the 23rd of July 1853, all the members of the firm of Sewell, Janney & Owings, executed to said Kroesen, (the plaintiff,) a deed of trust, which was duly acknowledged and recorded, conveying to said plaintiff all the credits of the firm. The defendant, Cadwallader, by his agent, Moore, dealt with the firm of Sewell, Janney & Owings, in the years 1851 and 1852, purchasing groceries from them, for which bills were sent in every six months, which bills were paid in cash. In January 1853, the bill for the previous six months

was sent in, and Moore came to the city for the purpose of paying it in cash as usual. In the street he met James S. Sewell, one of the partners, who said, he wished to purchase some cattle from said Moore, and proposed to do so if Moore would take the price of them in groceries out of the store of Sewell, Janney & Owings. Moore answered, that if Sewell would include Cadwallader's bill already due in the cattle transaction, he, Moore, would take out the balance of the price of the cattle in groceries at the same; that is, cash prices. To this Sewell agreed, and said he would send the overseer of said Sewell's farm, in Harford County, to select the cattle and fix upon the prices. His overseer accordingly went and selected eighteen head of cattle at $15.50 a head, and they were delivered to him. After this, Moore, as agent for Cadwallader, sent orders to the store of Sewell, Janney & Owings, for groceries, in the same manner that he had done before the transaction with Sewell relating to the cattle. Moore, when he thought the bill for groceries would equal the price of the cattle, called several times at the store of Sewell, Janney & Owings to have a settlement, but failed to find Sewell. At the last time of calling, he saw Owings, who said that he had better see Sewell as soon as possible and have the account settled; that he knew Moore had an offset against the grocery bill; that the books were going into the hands of a trustee, and that then Moore would not have such a good opportunity to settle. Moore remained in town a a few days until he saw Sewell, who said he wished Moore had come the day before, and that their books had gone into a trustee's hand. For six months before their failure Moore had been convinced that the firm was not solvent.

Under this submission, the Court, (PRICE, J.,) gave judgment for $518.71, being the full amount of the plaintiff's claim with interest, and from this judgment the defendant appealed.

Cadwallader *vs.* Kroesen.

The cause was argued before BARTOL, GOLDSBOROUGH, and COCHRAN, J. .

*T. Yates Walsh* and *R. R. Boarman* for the appellant.

1st. The appellant will contend upon the proof, that the transaction was a sale of the cattle to the firm, for groceries belonging to the firm. There is no proof that the firm did not receive the benefit of the cattle.

2nd. Supposing, for the sake of the argument, there is no proof of collusion on the part of Moore,—there is no pretence of such a thing on the part of Cadwallader, who in good faith parted with his property,—Moore was not his agent to commit a wrong. *Thruston vs. Lloyd*, 4 *Md. Rep.*, 292, 293. *Manning & Co. vs. Hays*, 6. *Md. Rep.*, 5. *Collyer on Part.*, 182. 1 *Pars. on Contracts*, 154, 157 and 162. 9 *Law Library*, 77, *Title*, *"Partnership."* *Doremus et al. vs. McCormick*, 7 *Gill*, 49.

*Thomas Donaldson* for the appellee.

The appellee contends that the judgment should be affirmed. The purchase of cattle by Sewell for his farm in Harford County, was on Sewell's individual account, and he had no power, for such consideration, either to release Cadwallader's indebtedness to the firm of Sewell, Janney & Owings, or to agree to give the goods of the firm in payment for the cattle. The business of the firm was that of a wholesale grocery and commission house; the testimony shows that this fact, as also the fact that the cattle were purchased for the use of Sewell himself, were well known to Moore, the defendant's agent. It is also admitted that no other dealings of the kind had ever taken place with the firm.

Owings knew that there was an unsettled account between Sewell and Moore, but there is no proof that Owings ever consented to the firm's becoming responsible for Sewell's debt. Even if he had done so, however,

Janney, the third partner, never so consented; and it would appear, moreover, that before Owings had said any thing in relation to Moore's transaction with Sewell, the deed of trust to Kroesen had been executed, and the firm was about to deliver its books and accounts into the trustee's hands. In no case could Sewell's debt to Moore be made an offset to the firm's claim against Cadwallader. The agreement between Sewell and Moore was, in law, a fraud upon the partnership. The authorities clearly show, that the decision of the Court below was right, and that the judgment should be affirmed. *Brown vs. Duncanson,* 4 *H. & McH.,* 350. *Stewart vs. McIntosh,* 4 *H. & J.,* 235 *Thurston vs. Lloyd,* 4 *Md. Rep.,* 283. *Manning et al. vs. Hays,* 6 *Md. Rep.,* 5. *Livingston vs. Roosevelt,* 4 *Johns.,* 251, 275–277. *Dob vs. Halsey,* 16 *Johns.,* 34. *Gram vs. Caldwell,* 5 *Cow.,* 489. *Kemeys vs. Richards,* 11 *Barb.,* 312. *Eastman vs. Cooper,* 15 *Pick.,* 276–290. *Rogers vs. Batchelor,* 12 *Pet.,* 230. 3 *Kent Com., p.* 42, side paging. *Story on Partn.,* secs. 134–154. *Collyer on Partn.,* secs. 483, 501. *Mercein vs. Mack,* 10 *Wendell,* 461.

GOLDSBOROUGH, J., after stating the facts of the case in substance as on pages 200–202, *ante,* delivered the opinion of this Court.

After a careful review and consideration of the statement and testimony, we think that the Judge of the Circuit Court was authorized to infer that the agreement between Sewell and Moore for the sale and purchase of the cattle mentioned in the statement, was for the private benefit of Sewell, and that it was made without the knowledge and consent of Sewell's co-partners. Though the evidence shows that the groceries which Moore had obtained, and was about to obtain, belonged to the firm, yet the payment for them, by delivery of the cattle to Sewell alone, was a transaction so foreign to the usual course of

dealing, that this circumstance should have led Moore to inquire and inform himself whether the other members of the firm assented to the agreement, or that the value of the cattle had enured to their mutual benefit. There is no evidence of either.

The course of dealing between the appellant, through his agent, Moore, and the firm for several years before the agreement for the cattle, had been of that character which would lead the parties to infer that the bill of groceries (the subject of this controversy) was to be delivered and paid for in like manner as before. There is no necessity to impute fraud to Sewell, or collusion between him and Moore.

Sewell, it may be reasonably concluded, intended to charge himself with the value of the cattle on the books of the firm, and Moore, in ignorance of the law, may have believed that Sewell had authority to bind the firm by such an agreement. The mutual responsibilities of partners, and the power of one partner to bind his co-partners in the usual routine of partnership transactions is too well established to require the citation of authorities; but where an agreement is made by one partner out of this routine, the circumstances attendant upon the transaction would in an ordinary trial, be properly submitted to the jury: in this case, the province of the jury being conferred upon the Judge of the Court, we see no just reason to disturb the conclusion which he deduced from the facts submitted. The judgment must be affirmed. See 4 *H. & McH.*, 350. 6 *Md. Rep.*, 8. 11 *Barbour's S. C. Rep.*, 312. *Collyer on Part.*, secs. 483, 501. 10 *Wendell*, 461.

<div align="right">

*Judgment affirmed.*