| 10 | 455 |
| e68 | 266 |

# RUSSELL M. WILLIAMS v. WILLIAM B. BARNETT.

1. PARTNERS; *Power to dispose of Partnership Property.* Each member of a partnership has, in the absence of stipulations to the contrary, the *jus disponendi* in reference to all partnership property, but that right is subordinate to the obligation to make all dispositions for the benefit of the partnership.

2. ————— *Sales Fraudulent and Void.* Where a party, with knowledge of a partnership, purchases from one member of the firm the bulk of the partnership property, and by the terms of the contract between them the proceeds are to be applied to the separate private account of such partner, without the knowledge or consent of the other partners, such sale is as against them fraudulent, and passes no title.

3. ————— *Knowledge of Purchaser.* Especially is this true where the terms of the partnership known to the buyer obviously show that the partners intended to vest the control of the property in the other partners.

4. EQUITY; *No Right of Recovery, Error Disregarded.* Where, upon the plaintiff's own testimony it is clear that he was not entitled to any relief, a judgment against him will not be disturbed, no matter what errors may appear in the record.

### *Error from Doniphan District Court.*

THIS case was here once before, and is reported in 7 Kas., 339. *Williams* sued *Barnett* for the alleged unlawful con-

version of 4,000 bushels of corn, which plaintiff claimed to have purchased of Bailey, Weightman & Butts, the contract of purchase being made with Butts. Defendant answered, denying the conversion, and alleging that the corn was the property of Harris, Hutchinson & Co., for whom it had been purchased, and to whom he had delivered it. *Barnett* was the keeper of a grain and storage warehouse, and the corn in controversy had been stored with him upon account of Bailey, Weightman & Butts, who held *Barnett's* warehouse receipts therefor. These receipts were transferred to Harris, Hutchinson & Co., and to them, on presentation of said receipts, the corn was delivered. *Williams* claimed that his purchase from Butts, one of the partners, was prior to the transfer of the warehouse-receipts; and the defense was, that the sale made by Butts to *Williams* was fraudulent, and that *Williams* purchased with full knowledge of all the facts. The articles of agreement or partnership between Bailey, Weightman & Butts are as follows:

"THIS AGREEMENT made and executed this the first day of December, 1869, by and between Bailey & Weightman, of St. Joseph, Mo., party of the first part, and Chas. R. Butts, of White Cloud, Kansas, party of the second part, witnesseth: The party of the first part hereby agree with the party of the second part to furnish the said party of the second part $10,000 for the purchase of corn — said purchase to be made in the name of the party of the first part. And it is further agreed that all moneys over and above the said $10,000 necessary to buy 100,000 bushels or more of good sound corn, the party of the first part hereby agree to assist the party of the second part in negotiating for the same. And all corn bought under this agreement to be purchased in the name of the party of the first part. In the disposition or sale of all corn bought under this agreement the gain or loss to be equally sustained and shared between the parties to each part. The party of the second part hereby further agrees to attend to the purchasing and shipping of said corn; and also, to confer with the party of the first part as to prices which shall be paid in the purchasing of said corn.        BAILEY & WEIGHTMAN.
                                    CHARLES R. BUTTS."

The bill of sale given by Butts to *Williams* is as follows:

R. M. WILLIAMS,
  Bo't of Bailey & Weightman, & C. R. Butts:

| | |
|---|---|
| 2,000 bush. of corn in ear in crib, at White Cloud, Kansas, at 40c. | $   800  00 |
| 4,000 bush. of corn in ear in crib, at Hiawatha, Kansas, at 40c... | 1,600  00 |
| 3,500 bush. corn, shelled and sacked, at Lafayette, Kansas, at 53c. | 1,925  00 |
| 966 bush. corn, shelled and sacked, at Iowa Point, Kansas, at 55c. | 531  30 |
| 430 bush. corn to be delivered, shelled and sacked, at Iowa Point and Robinson, Kansas, upon which $1,650 has been advanced, | 1,650  00 |
| 3,250 gunnies—1,600 at White Cloud, 900 at Lafayette, 500 at Robinson, 250 at Hiawatha, at 26c.................................... | 845  00 |
| | $6,751  30 |
| Less five per cent................................ .............. | $337  56 |
| | $6,413  74 |

Rec'd White Cloud, Kansas, August 8, 1870, six thousand four hundred and thirteen and 74-100 dollars, in full of the above amount.

BAILEY & WEIGHTMAN, & C. R. BUTTS,
*Per C. R. Butts.*

The action was tried at the March Term 1872 of the district court. The instruction complained of is copied in the opinion. Verdict and judgment in favor of the defendant, and *Williams* brings the case here on error.

*H. C. Hawkins, F. M. Keith,* and *Nathan Price,* for plaintiff in error:

1. Upon the issues, the evidence, and the instructions, two questions arise: First, was the sale of 4,000 bushels of corn from a lot of 6,000 bushels a valid sale so as to change the title to the corn now in controversy? This question we had supposed was practically settled by this court when this case was here before. See case of *Barnett v. Williams,* 7 Kas.. 339, 342; also 8 Howard, 397; 19 N. Y., 330; 25 N. Y., 278. When there is anything to be done after the sale, such as separation or identification, the title will not pass unless this thing is to be done by the buyer alone: 1 Pars. on Contr., 441, and notes; 6 Wis., 490. There can be no question in this case that it was the intention of the parties that the title to the property should pass; and it is shown by the testimony of plaintiff Williams that the *plaintiff* was to weigh and measure this corn, to shell and sack it, and in fact, do all that was to be done entirely at his own expense. This testimony is nowhere disputed directly or indirectly, nor by any circumstance.

30—10 KAS.

2. Could the other partners, if this sale was made by Butts, one of the members of the firm of Bailey, Weightman & Butts, annul that sale and take possession of said corn and turn it over to their own private creditors? for we submit that nowhere in the evidence does it appear that the firm of Bailey, Weightman & Butts were indebted to any one. On the other hand, the evidence does show that Bailey & Weightman were indebted to Harris, Hutchinson & Co. This question has arisen in the imaginations of the learned gentlemen on the other side of this case since the case was in this court before, although the pleadings and issues are the same; and we insist that under the issues made by the pleadings (for issues must be made by the pleadings) this question is not in the case, and consequently the court should have given the instruction asked for by plaintiff, and not have confused their minds by a modification which placed them at sea entirely as to what was meant by it.

But when we come to the 1st instruction asked by the defendant, it is much worse. Not only is there no issue of this kind made, but there is no evidence to support it. The only evidence which has the slightest tendency that way is the evidence of the plaintiff in which plaintiff says he had the bill of sale receipted in full when only $350 was paid down, because he wanted to settle with Butts, with whom he was well acquainted, rather than with Bailey & Weightman, whom he had never seen. Now we say that *settling* with Butts for the balance, and Butts applying the money to his *own private account*, are two very distinct things. And again we say that the instruction as given is not the law. In any case, there is nothing in the evidence to show that the firm of Bailey, Weightman & Butts was not perfectly solvent; and we submit, that in such a firm, where one of the members is in nowise indebted to the firm or its members, or either himself or the firm indebted to any one, if he concludes to sell an article of partnership property and apply the proceeds to his own private account, the purchaser will take a good title. 3 Kent. Com., 44; 12 Peters, 230; Story on Part.,

§§ 132, 133.   If the law is as given by said 1st instruction, then, no matter how solvent one partner might be, and no matter how solvent the firm of which he was a member might be, still his sales of partnership property must be set aside, and his bankrupt and worthless partners take the partnership property from the hands of a *bona fide* purchaser and apply it to their own private debts.

*C. W. Johnson*, and *Albert Perry*, for defendant in error:

1. Under the contract of partnership between Bailey, Weightman, and Butts, the corn in dispute was to be under the control of Bailey & Weightman when purchased and shipped.   Williams was informed of this arrangement between the partners — had read the articles of partnership. Williams, with the knowledge of this private arrangement between the partners, had no right to make, of Butts, the purchase of this corn.   If a person with whom a partner deals is conscious of the misconduct of that partner, that the partner is violating a private agreement between the partners themselves, he cannot call upon the firm to fulfill the contract. Gow on Part., 150; Story on Part., § 131; *Witman v. Baker*, 9 Johns., 307; *Livingston v. Roosevelt*, 4 Johns., 352; 3 Hill, 279; 2 Caines, 246.

2. The sale by Butts to Williams, whatever power of sale Butts had, of the corn, was fraudulent, and did not bind the other partners, and no title passed, because the purpose and effect of the sale was to place the proceeds of the sale beyond the reach of the other partners, and apply it to the private, individual account of Butts.   Story, §§ 131, 132; 12 Pet., 221; 7 Wend., 326.

3. If Butts had the *jus disponendi* of the corn, and there was no fraud in the alleged sale, yet no title to the corn passed to Williams because the corn in dispute was a part of a larger lot of corn, and there had been no separation, identification, and no determination of the amount to be paid by Williams, and no delivery. 11 Iredell, 609; 6 Pick., 280; 7 Ohio, 467; Hilliard on Sales, 136, note 2; 11 Cush., 573;

1 Eng. Com. Law Rep., 98, 317; 11 Iowa, 541; 4 Foster, 335; 33 N. H., 183; Story on Sales, §§ 296, 297.

But it is claimed that the delivery of the bill of sale was a constructive delivery, sufficient to pass the title. It may be, as between vendor and vendee, but not as to *bona fide* purchasers. 1 Pars. on Cont., 465, § 5.

4. The title to the corn had become perfected in Harris, Hutchinson & Co., before the alleged sale to Williams. Advances were made by them, crib receipts had been given, and on the 4th of August 1870, before the sale to Williams, an order was given by Bailey & Weightman to Harris, Hutchinson & Co., for this corn; and under the authority of *Gibson v. Stephens*, 8 Howard, 397, and approved by this court in 7 Kas., 342, title had vested in Harris, Hutchinson & Co.

If justice has been done, the court below did not err in refusing to disturb the verdict of the jury. The equities of this case are all with the defendant.

The opinion of the court was delivered by

BREWER, J.: This case has been here once before. On the first trial in the district court the plaintiff (present plaintiff in error) obtained a judgment. That judgment was reversed by this court on the ground of error in the admission of testimony. (7 Kas., 339.) Upon the second trial the defendant obtained judgment, and to reverse such judgment the present proceeding is instituted. Two questions arise on the record. The first question we shall consider grows out of the giving, at the instance of the defendant, the following instruction:

"If the jury find from the evidence that the plaintiff, with the knowledge of the partnership, contracted for the corn in dispute of one of the partners, Butts, and the proceeds of such sale, by the terms of the contract between such partner and buyer, were to be applied to the separate private account of such partner, without the knowledge and consent of the other partners, such sale is, as against the other partners, fraudulent, and no title passed, and the jury must find for the defendant."

We see no error in this instruction. True, each member of

a partnership has the *jus disponendi* in reference to all the part-

**1. Partners; power to dispose of partnership property.**

nership property; but that right is subordinate to the obligation to make all dispositions for the benefit of the partnership. He may not pledge the partnership credit, or use the partnership assets, for the satisfaction of his individual indebtedness without the consent of his partners. That is a use foreign to the purposes of a partnership. Neither can he in any way dispose of the property so as to deprive the partnership of the benefit of it. In *Rogers v. Batchelor*, 12 Peters, 229, the supreme court of the U. S. said: "The implied authority of each partner to dispose of the partnership funds strictly and rightfully extends only to the business and transactions of the partnership itself; and any disposition of these funds by any partner beyond such purposes is an excess of this authority as partner, and a misappropriation of those funds, for which the partner is responsible to the partnership, though in the case of *bona fide* purchasers without notice for a valuable consideration the partnership may be bound by such acts. * * * In the case of a partner paying his own separate debt out of the partnership funds, it is manifest that it is a violation of his

**2. Fraudulent sales by partner.**

duty, and of the rights of his partners, unless they have assented to it. The act is an illegal conversion of the funds, and the separate creditor can have no better title to the funds than his debtor himself had." See also upon the general subject of the limitation upon the power of a partner to use partnership funds or credit for individual benefit without the consent of his partners, Story on Partnership, §§ 131, 133; 3 Kent's Com., 43; *Cadwallader v. Rooesen*, 22 Md., 200; *Dob v. Halsey*, 16 Johns., 34; *Gansevort v. Williams*, 14 Wend., 133. The question has generally arisen in cases where a partner has given a firm note for his individual debt. But the principle on which these cases rest sustains this instruction. That which vitiates is, the attempt to wrong the partnership. To it belongs a certain amount of credit and property. To transfer either, without its consent, is a trespass on its rights. And it makes no difference whether

its credit or its property be taken, nor whether the proceeds be applied to the payment of a pre-existing debt, or the creation of a new account. In either case the partnership loses, while the individual gains. Of course, it often results, from the acts of *bona fide* purchases from one of the partners, that that partner is placed in possession of money or securities, and converts the same to the injury of the partnership. This, considering the powers of a partner, is unavoidable, and in nowise chargeable to the purchaser. But when the purchaser

**3. Knowledge of purchaser.** contracts to secure to the individual the price that belongs to the partnership, he is a party to the wrong, and cannot complain if he suffer the penalty. We think therefore, that the principle of law embodied in this instruction is correct. But it is insisted that though this may be true as a general proposition, yet there are many exceptions and qualifications to it, and that at any rate it is wholly inapplicable to the facts of this case. It may be that there are many things which will qualify the application of this principle to any given case. The partners may have expressly consented to such transaction. The course of prior dealing may have been such as to authorize it. The one partner may have obtained, by the consent of the others, an exclusive interest in the particular property. Probably, too, where the amount is small, and the interest of the partner making the disposal is so great that no reasonable danger to the interests of the others can be apprehended, the transaction will be sustained. It will then be regarded as simply the exercise by the partner of his right to draw out funds for his own support. But none of these exceptions or qualifications appear in this case. It was unnecessary therefore for the court to notice them in his instructions.

We think also that the facts of the case warranted this instruction. The plaintiff, by his own testimony, knew of the partnership, contracted with one of the partners for $6,400 worth of property, about all the partnership owned, paid $350 down, took a receipt in full from him in the name of the firm, and agreed with the one partner to whom he had paid the

$350 to secure to him individually the balance. His own words are, "The reason I had the bill of sale receipted in full, when only $350 had been advanced was, that my settlement for the remainder of the amount due, when ascertained, should not be with the firm, or with Bailey or Weightman, whom I did not know, but with Butts, with whom I was well acquainted; it was to make the remainder of the transaction an individual, not a firm matter." The instruction was eminently appropriate. The views we have thus stated seem to us decisive of this case, and to avoid the necessity of further examination. It is unnecessary to inquire into the validity of the transfer to Harris, Hutchinson & Co., or the title or right of possession of defendant. The plaintiff must recover upon his own title and right of possession; and if it appear from his own testimony, as we think it does, that his claim is based upon a transaction which the law will not tolerate, it matters not what errors may be in the record, the judgment against him should not be disturbed. We have hitherto said nothing about the terms of the partnership between Bailey, Weightman & Butts, but have treated the case as though there were nothing in it differing from those of any ordinary partnership, as affecting this question. The partnership was for the purchase and sale of corn. The contract was reduced to writing. Bailey & Weightman were to furnish $10,000, and Butts was to attend to the purchasing and shipping of the corn. Twice in the contract, which only fills a single page of legal cap, is it stipulated that all the corn shall be purchased in the name of Bailey & Weightman. This written contract the plaintiff had seen and read, and had been consulted with by Butts as to its effect. While by its terms Bailey, Weightman and Butts were unquestionably partners, and a sale by Butts to a *bona fide* purchaser, ignorant of the terms of the contract, would have passed good title, it is nevertheless evident that the parties intended to vest the control of the corn purchased in Bailey & Weightman, and the plaintiff purchased with notice of such

4. Fraudulent purchase; no equity. Error to be disregarded.

intention. This makes the case against him all the stronger. The judgment will be affirmed.

All the Justices concurring.