JULIAN BLAKER AND WADE BLAKER, *Partners under the firm-name of J. & W. Blaker*, v. F. M. SANDS, *sole surviving partner of the late firm of F. & C. Sands.*

1. SURVIVING PARTNER—*Power over Assets of Firm.* Upon the death of one of the members of a firm composed of two persons, the surviving partner becomes a trustee for all concerned. He holds the legal title to all the personal property, choses in action and other assets of the firm, and his control of all the partnership assets, real and personal, legal and equitable, is limited only by the purposes for which it is granted to him, and the provisions of the statute concerning partnership estates; therefore, where such a surviving partner has not been cited to give the statutory bond as a surviving partner, and has not voluntarily appeared and refused to give bond, or has not in some other way declined to take charge of the partnership property, he has authority to recover by legal process the possession of the personal property of the late firm.

2. REPLEVIN; *Inadmissible Evidence.* In an action of replevin brought to recover the possession of certain sheep, the answer was a general denial only: *Held,* That the trial court committed no error in excluding evidence offered by the defendants tending to show that some of the sheep died in their possession between the commencement of the action and the trial, by no fault of theirs, as under the issues the evidence was inadmissible.

3. ———— Where a party is in possession of personal property belonging to another, as the mere bailee for the owner, the property in his possession is at the risk of the owner.

4. WRONGFUL POSSESSION; *Insufficient Defense.* A party, not being the owner of personal property, who takes it out of the possession of the real owner without his consent, holds it in his own wrong and at his own risk, and if subsequently judgment is rendered against him for the return of the property or its value, he cannot be excused from satisfying the judgment under the plea that the property has been lost in his hands even by the act of God.

5. PARTNER, *When No Power to Sell Joint Property.* Where a partnership is not strictly a trading one, and where the business in which the firm is engaged renders it indispensable for the ownership of the partnership property to be continued in the firm until a dissolution of the firm, or other arrangements are made, one partner has no power to sell and dispose of all the joint property without the consent and in the temporary absence of his copartner.

6. PARTNERSHIP PROPERTY, *Sale of, When Valid—When Not.* Where the member of a partnership, not strictly a trading one, without authority so to do, undertakes to sell without the consent of his copartner, and

in his temporary absence, all of the joint property of the partnership, such sale is not valid against his copartner, but is binding upon the partner making the sale, and thereby the partner selling disposes of all his interest in the joint property of the partnership.

7. PARTNERSHIP, *Dissolution of.* Where there is no contract for the continuation of the partnership for a time certain, it is always in the power of any one partner to dissolve the partnership at his own pleasure, and for no other cause than that pleasure.

8. SALE OF PARTNERSHIP PROPERTY, *Effect of.* When a member of a partnership, not strictly a trading one, makes a sale of all the joint property of the firm without any authority therefor and in the temporary absence of his copartner, and the partnership is not to continue to a time certain, the sale operates as a dissolution of the partnership, and the purchaser takes the interest of the partner from whom he purchases, and becomes a tenant-in-common of the joint stock of the late firm.

*Error from Butler District Court.*

ACTION, begun September 16, 1881, by *F. M. Sands,* sole surviving partner of the late firm of F. & C. Sands, against *Julian Blaker* and *Wade Blaker,* partners as J. & W. Blaker, to recover the possession of 1,100 grade merino wethers and two grade merino bucks, of the alleged value of $4,000. The order of delivery was executed on the 16th day of September, 1881, by the sheriff taking into his custody all of the property mentioned in the petition; and within twenty-four hours after the service of the order, the defendants, J. & W. Blaker, executed an undertaking to the plaintiff as prescribed by statute, to the effect that they would deliver the property to the plaintiff if delivery be adjudged, and pay all the costs and damages that might be awarded against them; and thereupon the sheriff returned the property to the defendants. The defendants in answering simply filed a general denial. On the trial they claimed that they bought the sheep in controversy on September 8, 1881, at two dollars per head, with the corral and some other property thrown in; that this transaction took place at the sheep ranch of F. & C. Sands, in Butler county; that they paid C. Sands, one of the partners, on that day, $25 on the contract; that the next day the sheep were delivered by C. E. Sands to them, and they paid the balance of the purchase-

money, $8,615, which C. E. Sands received, and deposited $8,000 of it in a bank at El Dorado in the name of the firm of F. & C. Sands, and the balance he placed in his pocket; that the next day C. E. Sands became dissatisfied with the trade, sought out the defendants and commenced negotiations for a purchase back of the sheep; that the defendants sold back to F. & C. Sands all of the sheep excepting those for which this action was brought. They offered to read in evidence, *inter alia*, the following bills of sale:

"We, Sands Brothers, do hereby sell to Blaker Brothers 4,320 head of graded merino sheep, being the flock that has been kept by us during the summer of 1881, about eight miles north of El Dorado, Kansas, and comprising thirty-six merino rams; also the shanty, all the corrals and all the lumber and boards at the ranch, of every kind and description; and also the heavy, wide-tired wagon owned by us. We hereby represent to said Blaker Brothers that we are exclusive owners of all the said property, that we own it in partnership, that the property is free and clear of all liens and incumbrances. We here also acknowledge the receipt of eight thousand six hundred and forty dollars ($8,640), in full payment for all of said property.

EL DORADO, KANSAS, September 8, 1881."

"This agreement, made and entered into this 9th day of September, 1881, by and between Blaker Bros. and Sands Bros., is as follows, viz.: Said Blaker Bros. hereby sell to Sands Bros. the flock of sheep bought by Blaker Bros. of Sands Bros. on September 8, 1881, excepting the following-described sheep, viz.: eleven hundred wethers one year old and over, Blaker Bros.' choice, provided there are that many of that age, and if not, Blaker Bros. to select either yearlings or dry ewes to complete the number; and two merino rams, Sands Bros.' choice. F. & C. SANDS.

J. & W. BLAKER."

These were excluded as evidence. The court instructed the jury as follows:

"It will be your duty in this case to find for the plaintiff. You will ascertain from the evidence the market value of the sheep in controversy on the 16th of last September, in this county, and state the amount thereof in your verdict, which

will constitute the value of the plaintiff's possession of the sheep."

The verdict of the jury was, that the plaintiff at the commencement of the action was entitled to the immediate possession of the property in controversy, and that the defendants at that time wrongfully detained the same, and that the value of the plaintiff's possession of said property was $3,300, being three dollars per head. Judgment was entered for the plaintiff upon the verdict, and the defendants bring the case here.

*A. L. Redden,* for plaintiffs in error.

*C. A. Leland,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: It is alleged that the petition was fatally defective in not showing that F. M. Sands had given a bond as surviving partner. As the action was commenced in the name of F. M. Sands, as the sole surviving partner of the late firm of F. & C. Sands, if the other allegations in the petition were sufficient, the failure to allege that the plaintiff had given a bond as surviving partner was no defect whatever. Upon the death of a partner, the survivor becomes a trustee for all concerned. He holds the legal title to all the personal property, choses in action, and other assets of the firm; and his control of all the partnership assets, real and personal, legal and equitable, is absolute and indefeasible, limited only by the purposes for which it is granted to him, and the provisions of the statute concerning partnership estates. Until plaintiff was cited under the provisions of § 35, ch. 37, Comp. Laws 1879, to give a bond as surviving partner, he had the right to the possession of the partnership property. (*Carr v. Catlin,* 13 Kas. 393.) The citation was a matter personal to the plaintiff as surviving partner, and it was an act required to be done to divest him of his right to control and dispose of the property. Unless he was cited or voluntarily appeared in the court and refused to give the statutory bond, or in some other way declined to take charge of the

partnership property so as to waive a citation, he was never divested of his control over said property.

II. The plaintiffs in error (defendants below) offered to show that after the execution of the redelivery bond by them, one hundred of the sheep died without any fault or neglect on their part, and from unavoidable causes. This evidence was excluded, and of this, complaint is made. There was nothing in the answer setting forth that any of the property described in the petition between the commencement of the suit and the trial was lost through the act of God, and no supplemental answer was filed alleging such loss, and therefore under the issues in the case, as made by the pleadings, the evidence was not admissible.

Upon the question discussed in the briefs, whether the fact that property is lost through the act of God may be set up as a defense, the rule is that where a party is in possession of personal property belonging to another, and is to be regarded as a mere bailee for the owner, the property in his possession is at the risk of the owner. On the other hand, a person not being the owner of goods, who takes them out of the possession of the real owner, holds them in his own wrong and at his own risk. He has deprived the real owner of the possession, and has also deprived him of the means of disposing of the property pending the litigation to recover it, and if at the end of a litigation over the property it is determined that he has no right to the possession thereof, and judgment is rendered against him for the return of the property or its value, he cannot on principle or authority be excused from satisfying said judgment under a plea that the property has been lost in his hands, even by the act of God. (*De Thomas v. Witherby*, S. C. of Cal., 14 Reporter, 262–3.

III. The final and the important question in this case is as to the effect of the attempted transfer and sale by C. E. Sands, as member of the firm of F. & C. Sands, to the plaintiffs in error (defendants below) of all the partnership property of the firm without the consent and in the temporary absence of his copartner as evidenced by the bill of sale of

September 8, 1881. The trial court, in excluding the bill of sale and other evidence tending to prove that plaintiffs in error bought the sheep in controversy of the firm of F. & C. Sands by arrangements with C. E. Sands, held that any sale or transfer by C. E. Sands without the consent and in the absence of his copartner would not bind the firm of F. & C. Sands, unless it was shown that F. M. Sands received some benefit from the sale, or in some manner ratified it by receiving the money, or that C. E. Sands had authority to sign the firm-name, and that without ratification or authority or the reception of the money by F. M. Sands, the bill of sale of September 8, 1881, was an absolute nullity. It was disclosed by the evidence that the partnership between F. & C. Sands was not strictly a trading partnership, but one devoted to the increase and improvement of the sheep owned by them; generally no purchases being made except of breeding sheep, and no sales except culls of the flock. It was understood between the partners that each was to do his share of the business and take his share of the profits that resulted from it; that they were to continue in the sheep business until they made more money out of it; but there was no contract, either written or verbal, for the partnership to continue to a time certain. During the spring and summer of 1881, both of the brothers of the firm were personally in charge of the sheep in Butler county in this state, until the 5th or 6th of July. Just previously they had finished shearing the sheep, and F. M. Sands went home, partly to make a visit, and partly to see about selling the wool. The wool had been shipped to Boston, Mass.; and the home of F. M. Sands was in Dutchess county, N. Y. The sheep were then left in charge of the brother, C. E. Sands, with no special or general authority to dispose of them as a herd or flock. The sale to plaintiffs in error of all the sheep and property of the firm was made by C. E. Sands, on September 8, 1881, while his brother was east. C. E. Sands died within two days after the same, and F. M. Sands returned to Butler county immediately afterward.

As the partnership of F. & C. Sands was not strictly a trading one, and as the business in which they were engaged rendered it indispensable for the ownership of the partnership property to be continued in the firm until a dissolution thereof, or other arrangements were made, C. E. Sands had no power to sell or dispose of all of the joint property in the temporary absence of his copartner. While a contract of partnership constitutes each of its members an agent for the others, it is only for the purpose of carrying on the partnership—not for destroying it. Stripping a firm of all its property is a thing not contemplated in carrying on a partnership, and consequently no agency for such a purpose is intended to be created; therefore no authority can be admitted in one partner to sell the entire property of the firm, when the object of the firm is not trading, buying and selling, but a business in which the continued ownership of the property is necessary. (*Slaon v. Moore,* 77 Pa. St. 217; *Kimball v. Ins. Co.,* 8 Bosw. [N. Y.] 495; *Kirby v. Ingersoll,* Harrington's Ch. Rep. [Mich.] 172. See also *John v. Crichton,* 11 Reporter, 811; also Parsons on Partnership, 3d ed., pp. 174–190; 2 Lindley on Partnership, 4th ed., pp. 697, 698.)

The doctrine above stated in no way conflicts with *Williams v. Barnett,* 10 Kas. 460, when that case is fully examined, and in *Deitz v. Regnier,* 27 Kas. 94, it is expressly stated that partnerships in occupation or employment are controlled by rules different from those applicable to commercial or trading ones. While F. M. Sands had no authority to make an absolute transfer of the whole property of the firm without the consent and in the temporary absence of his copartner, yet the sale of September 8, 1881, was valid as against himself, and by the sale he transferred to plaintiffs in error all of his interest in the partnership property. (*North v. Mudge,* 13 Iowa, 496; *Chris v. Sherman,* 10 Iowa, 535; *Rhodes v. Amsick,* 38 Md. 345; *Tapley v. Butterfield,* 1 Metc. 515; *Arnold v. Stevenson,* 2 Nev, 234; *Sutlive v. Jones,* 61 Ga. 676.) After the sale of September 8, 1881, by C. E. Sands, he had no interest or share in the sheep sold,

or any of the partnership property, until his subsequent purchase of September 9, 1881. With that purchase, however, we have no concern, as the sheep in controversy were not included therein. As there was no contract for the partnership to continue to a time certain, the sale by C. E. Sands of September 8, 1881, operated as a dissolution of the partnership of the firm of F. & C. Sands, and the plaintiffs in error were substituted as the owners of the interest of C. E. Sands. After the dissolution, each of the parties—that is, the plaintiff and the defendants below—had as much right to any of the particular sheep sued for as any other of said parties, and all had as much right as the plaintiff. After the dissolution of the firm, plaintiff and defendants below became tenants-in-common of the joint stock of the late firm; and as under the bill of sale of September 8, 1881, they were tenants-in-common of the property in controversy, the exclusion of the bill of sale and other evidence tending to establish that C. E. Sands had sold and transferred his interest in the joint property of the firm to the plaintiffs in error, was material error. Every partner has authority to sell his interest in the joint property of the firm, or any part thereof, and as plaintiffs in error were put in actual possession by the partner who had charge of the sheep, and purchased of him his interest therein, they became, as above stated, tenants-in-common of the joint stock, and replevin would not lie against them. In this view also, the instructions given by the court were erroneous.

We do not intend in any way to intimate that the assignee of a partner's interest can withdraw his share of the joint effects of a partnership from the partner or partners in possession, or that such an assignee can maintain an action to recover his interest in the chattels of the firm. He may sue for an accounting, and will recover whatever his assignor would have been entitled to on a settlement of the partnership accounts; and until the affairs of the partnership are thus wound up, the partner who did not sell and has the manual possession of the firm property is entitled to the possession of the same. (*Miller v. Brigham*, 50 Cal. 615; *Horton's*

*Appeal,* 13 Pa. St. 67; *Meaher v. Cox,* 1 Sel. Cases, Ala., 156; Parsons on Partnership, 3d ed., 173–177.)

Other questions are presented, but as a new trial must be had we do not think they are material, or comment thereon necessary.

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.