No. 21,844.

C. B. COX, *Appellant,* v. JOHN T. DENTON et al., *Appellees.*

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Cattle—Letter of Inquiry—Not an Offer to Sell.* A letter written by one of three partners, at the dictation of his associates, inquiring, "Do you want to buy 240 good cattle," etc., describing, locating and pricing them and giving terms, and concluding, "Phone me at Wichita," etc., is not an offer to sell, subject to acceptance, but merely an inquiry to arouse the interest of the person addressed, in the hope or expectation that preliminary negotiations and an eventual bargain may be made.

2. SAME—*Partnership—Authority of One Partner to Bind His Associate Partners.* A well-recognized exception to the rule that one partner may bind his associates in the partnership, on matters relating thereto, is that one partner cannot so bind the partnership in a contract when

Cox v. Denton.

the other contracting party is fairly and fully informed that there are other partners interested in the transaction and that they object and will not assent thereto.

3. Same — *Damages — Insufficient Evidence — Demurrer Properly Sustained.* The evidence to support an action of damages for the breach of an alleged contract, examined, and *held* that a demurrer to such evidence was properly sustained.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed April 12, 1919. Affirmed.

*Howard J. Hodgson,* of Eureka, for the appellant.

*A. F. Sims,* of Howard, and *F. S. Jackson,* of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an action for damages for breach of an alleged contract for the sale of a herd of cattle.

Plaintiff's petition alleged that the defendants, John T. Denton, C. H. Wood, and J. O. West, were partners in a firm styled John T. Denton; that plaintiff made a contract with this partnership, through J. O. West, to purchase 240 head of steers at an agreed price; and that the defendant partners refused to deliver the cattle—all to the damage of plaintiff in a specified sum.

The defendants Denton and Wood denied under oath that they were partners of J. O. West; denied that West had authority to make a bargain for them or either of them; denied that West made a contract with plaintiff for the sale of cattle as alleged; and they each alleged, also, that West was a partner of the plaintiff, and that the contract was void.

A demurrer to plaintiff's evidence was sustained by the trial court, and the correctness of that ruling is the question for our review.

Allowing plaintiff's evidence that favorable consideration and generous credence to which it is entitled as against a demurrer, it was shown that defendant West had a conversation with defendant Wood, in which the latter told West that if he should find an opportunity to purchase cattle and doubted his own judgment, West might send for Wood, and if Wood and West should then decide to buy, they would ship them to mar-

ket and "go 50-50," which probably meant that they would share the profits and losses equally. Some time afterwards, pursuant to this arrangement, West discovered in Meade county the herd of cattle involved in this lawsuit, and wired Wood to come and look them over. Both Wood and Denton arrived, and after some preliminary talk between Denton, Wood, and West, in which it was agreed that Denton should do the bargaining with the owner of the cattle and that they would "split it three ways," the cattle were purchased. On the same day, West, with the sanction of Denton and Wood, and pursuant to their dictation, wrote and mailed a letter to plaintiff, which reads:

"2-26-17.

*"Mr. C. B. Cox, Eureka, Kans.*

"DEAR SIR: Do you want to buy 240 good 100 lb. [1000 lb.] cattle at 8.25 must be sold by Friday. Weighed in Meade Kans. on Rock Island, cattle to leave feed lot at sun rise drive 5 mi. & stand 2 hours, good boned cattle red and white face, good cattle for grass with plenty of flesh now. Phone me at Wichita Ks. c/o Acacia Hotel. Will be there 27-28-& to 9 on 1st.          J. O. WEST."

Plaintiff received this letter on the following day, February 27, and sent an oral message by a man named Stoner to West at Wichita that "he would take the cattle according to the letter." Stoner went to Wichita and delivered the message. Next day, February 28, plaintiff went to Wichita and met West at a hotel, and inquired if Stoner had informed him that he would take the cattle. Plaintiff also said, "I came up to go down and receive those cattle." West said, "All right." In the course of the same conversation West told plaintiff that he had two partners in the cattle and that they were "not wanting to come across with the contract." West had already received a letter from Wood saying:

*"Mr. J. West, Wichita, Kan.*

"Dear Friend here 1145 Mr. denton went to kc I am going home if the market looks bad he will wire me and I will trye to arrange for feed in the meantime don't close a deal on them cattel with out our nowing it first as I mite have feed bought for them call me at grenola Kans. 4 P M at our expens tomorrow mr denton will advise me as to market by that time."

Less important features of the evidence developed on cross-examination of plaintiff's witnesses, all of little consequence on a demurrer to the evidence, were that West had paid nothing

for his interest in the cattle; that if the cattle were not sold they were to be shipped to Wood's ranch and fed and indefinitely retained; and that West did not know and could not define what interest he would have in the cattle if that were done. It was also developed that plaintiff and West were dealing in cattle together and were jointly interested in certain cattle herds in Meade county and elsewhere.

The court is of the opinion that, tested by demurrer, Denton, Wood, and West were partners in this particular cattle deal, each having an interest in the possible profits, and each being subject to liability in the possible losses of the venture. But it seems clear that there was no lawful bargain between West and plaintiff which would bind Denton and Wood. West's letter to plaintiff, authorized by Denton and Wood, was not an offer to sell subject to acceptance. It was a mere inquiry designed to lead to preliminary negotiations and in the expectation that a bargain might be consummated. Moreover, if it could be construed as an offer to sell, there was no compliance with the terms on which an acceptance was to be indicated. If so construed, the method of acceptance indicated by the offer was "Phone me at Wichita, Ks. c/o Acacia Hotel." If Denton and Wood are to be bound by the letter which they dictated, they are to be bound by its terms, not otherwise—not by an oral message delivered at leisure by an unrecognized third person. But, in all justice and good conscience, it must be said that the letter of inquiry was not an offer; it was merely a common and practical inquiry to arouse the interest of one with whom preliminary negotiations and an eventual bargain might be made. (*Schon-Klingestein Co. v. Snow,* 43 Colo. 538, *Patton v. Arney,* 95 Iowa, 664; *Tanning Co. v. Telegraph Co.,* 143 N. C. 376; *Moulton v. Kershaw and another,* 59 Wis. 316; Note, 110 Am. St. Rep. 754; 35 Cyc. 50; 6 R. C. L. 600.)

Did a lawful and binding bargain arise when plaintiff met West in Wichita? We think not. In the same conversation in which plaintiff said, "I came up to go down and receive those cattle," and in which West said, "All right," West also said:

"I says I had another partner on these cattle, Mr. Denton and Mr. Wood, and they are not wanting to come across with the contract."

While it is familiar law that ordinarily one partner may bind his fellows on business matters within the scope of the partnership, in dealing with persons who have no notice of any

limitation of the partner's powers (*Bank v. Jacobs,* 97 Kan. 798, 156 Pac. 771), yet the rule is otherwise where the person dealing with a partner knows that the other partners are not assenting to the transaction. "The implied power of one partner to mortgage firm property is revoked by a dissent of his copartners," as against a mortgagee who, at the time the mortgage was given, knew of the dissent. (*Carr v. Hertz,* 54 N. J. Eq. 127.)

"The partnership relation makes each partner the agent of the others when acting within the scope of his power; but when his agency is denied, and his act forbidden by his copartner with notice to the party assuming to deal with him as the agent of the firm, his act is not that of the firm, but his individual act only." (*Yeager v. Wallace,* 57 Pa. St. 365, 368.)

"But these considerations touch rather the rights and interests of the partners. So far as the customer, the third party, is concerned—always supposing the transaction honest as to him—we should say that the question of the power of a majority would be put aside both in law and in equity by the general rule, that, if the transaction were within the business of the firm, it bound all the partners who gave no notice to the third party; and, on the other hand, that it did not bind recusant and protesting partners who gave sufficient notice of their dissent; and that, if it was without the business of the partnership, it bound nobody but those who authorized the act or ratified it." (Parsons on Partnership, 3d ed., 242.)

(See, also, *Staples v. Sprague,* 75 Maine, 458, 460; *Markle v. Wilbur,* 200 Pa. St. 457; *McCord Company v. Callaway & Company,* 109 Ga. 796; *Williams v. Barnett,* 10 Kan. 455, 461.)

Under the facts established by plaintiff's own evidence, he failed to make a case against Denton and Wood, and the demurrer to the evidence was properly sustained.

WEST, J. (dissenting): I dissent on the ground that the letter of February 26, 1917, was an offer to sell, which was accepted by Stoner for Cox.